## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| ALVIN V. JACKSON,<br>             Plaintiff<br><br>v.<br><br>NOVO NORDISK, INC. and NOVO NORDISK A/S,<br>             Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:26-cv-00119 |

## SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff named below, by and through the undersigned counsel, files this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

## **IDENTIFICATION OF PARTIES**

**Plaintiff(s)**

1.      Full (first, middle, and last) name of Plaintiff injured due to use of GLP-1 RA Product(s): _____ Alvin V. Jackson _____.

2.      If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: _____ N/A _____, as _____ of the estate of _____, deceased.

3.      If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): _____ N/A _____.

4.      If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: _____ N/A _____.


**Defendant(s)**

5.      Plaintiff is suing the following Defendant(s) (check all that apply):

   _X_  Novo Nordisk Inc.

   _X_  Novo Nordisk A/S

   _____  Eli Lilly and Company

   _____  Lilly USA, LLC

   _____  other(s) (identify): _____

## JURISDICTION AND VENUE

6.    City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

> Plaintiff is a citizen of the United States, a citizen of the State of Delaware, and a resident of the city of Smyrna, Delaware.

7.    State where Plaintiff was prescribed the GLP-1RA Product(s) at issue:

> Plaintiff's physician prescribed Victoza that was used by Plaintiff in the State of New Jersey.

8.    State of Plaintiff's residence at time of her use of the GLP-1RA Product(s) at issue:

> Plaintiff was a citizen of the State of New Jersey at the time of his GLP-1 RA use.

9.    City and state of Plaintiff's residence at time of diagnosis of injury:

> Plaintiff resided in East Orange, New Jersey at the time of his diagnosis of his injur(ies).

10.    Jurisdiction is based on:

> __X__    diversity of citizenship pursuant to 28 U.S.C. § 1332
>
> _____    other (plead in sufficient detail as required by applicable rules):
>
> _____

11.    The District Courts where Plaintiff might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

> United States District Court for the District of New Jersey

12.    Venue is proper in the District Court identified in Paragraph 11 because:

> __X__    a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

_____ other (plead in sufficient detail as required by applicable rules):

_____

13.    If applicable, identify the citizenship of any additional Defendant(s) named above:

_____

## **PRODUCT USE**

14.    Plaintiff used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

_____ Ozempic (semaglutide)

_____ Wegovy (semaglutide)

_____ Rybelsus (oral semaglutide)

___X___ Victoza (liraglutide)

_____ Saxenda (liraglutide)

_____ Trulicity (dulaglutide)

_____ Mounjaro (tirzepatide)

_____ Zepbound (tirzepatide)

_____ Other(s) (specify): _____

15.    To the best of Plaintiff's knowledge, Plaintiff used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

Plaintiff used Victoza, manufactured by Novo Nordisk A/S, et al., from in or about October 2012 until in or about January 2022 .

4

. **INJURIES AND DAMAGES**

16.    To the best of Plaintiff's knowledge, as a result of using GLP-1 RA Product(s), Plaintiff suffered the following injuries, including their sequelae (check all that apply):

_____ Gastroparesis

_____ Other gastro-intestinal injuries (specify) _____.

_____ Ileus

_____ Ischemic Bowel/Ischemic Colitis

_____ Intestinal Obstruction

_____ Necrotizing Pancreatitis

__X__ Gallbladder Injury (specify) <u>Cholecystectomy required/performed</u>

_____ Micronutrient Deficiency

_____ Wernicke's encephalopathy

_____ Aspiration

_____ Death

_____ Additional/Other(s) (specify): _____

17.    Plaintiff's injuries occurred in approximately (month and year)?

<u>Plaintiff was hospitalized in September 2020 (September 14, 2020 – September 19, 2020). During his hospitalization, it was determined a cholecystectomy was necessary and was thereafter performed.</u>

18.    In addition, as a result of Plaintiff's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

    __X__ Injury to self

    _____ Injury to person represented

    __X__ Economic loss

    _____ Wrongful death

    _____ Survivorship

    _____ Loss of services

    _____ Loss of consortium

    _____ other(s) (specify): _____

## CAUSES OF ACTION

19.    In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

    _____ Count I:    Failure to Warn – Negligence

    _____ Count II:    Failure to Warn – Strict Liability

    _____ Count III:    Breach of Express Warranty/Failure to Conform to Representations

    _____ Count IV:    Breach of Implied Warranty

    __X__ Count V:    Fraudulent Concealment/Fraud by Omission
                       *See* Exhibit "A" regarding Count V

    __X__ Count VI:    Fraudulent/Intentional Misrepresentation
                       *See* Exhibit "A" regarding Count VI

    _____ Count VII:    Negligent Misrepresentation/Marketing

_____ Count VIII: Strict Product Liability Misrepresentation/Marketing

_____ Count IX:   Innocent Misrepresentation/Marketing

__X__ Count X:    Unfair Trade Practices/Consumer Protection (see below)
                  _See_ Exhibit B" regarding Count X

_____ Count XI:   Negligence

_____ Count XII:  Negligent Undertaking

__X__ Count XIII: State Product Liability Act (see below)

_____ Count XIV: Wrongful Death

_____ Count XV:  Loss of Consortium

_____ Count XVI: Survival Action

_____ Other(s) (specify, and on separate pages, plead additional facts supporting

any above claim in sufficient detail as required by applicable rules):

_____

20.    If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer

protection statutes of any jurisdiction as identified in Count X above:*

a. Indicate the specific statute (including subsections) under which Plaintiff is

bringing such claims:

The New Jersey Consumer Fraud Act ("New Jersey CFA" or the "Statute"),

N.J. Rev. Stat. § 56:8-1, et seq. Plaintiff brings his claim under N.J. Rev. Stat.

§ 56:8-2 (Fraud, etc., in connection with sale or advertisement of merchandise

or real estate as unlawful practice); N.J. Rev. Stat. § 8-2.2 (Scheme to not sell

item or service as advertised); N.J. Rev. Stat. § 8-2.11 (Violations; liability);

N.J. Rev. Stat. § 8-2.12 (Recovery of refund in private action); and N.J. Rev.

Stat. § 8-2.13 (Cumulation of rights and remedies); N.J. Rev. Stat. § 56-8-13

(Penalties) Additionally, see Plaintiffs' _Master Complaint,_ Count X, paragraphs

850-865. Defendants misled consumers and Plaintiff's physician regarding the safety and risks associated with the use of their GLP-1 RA Product(s) by overstating the benefits and downplaying the risks from using the Product(s). Plaintiff incorporates Exhibit "B."

b.  Identify the factual allegations supporting those claims (by subsection, if applicable):

Defendants misled consumers and Plaintiff's physician regarding the safety and risks associated with the use of their GLP-1 RA Product by overstating the benefits and downplaying the risks from using the Product. Defendants' Victoza-related national television commercials included characters stating the Product was "better than leading branded injectables – the one I used to use" and "while it isn't for weight loss, Victoza may help you lose some weight." Defendants' commercials further focused on the fact that rather than increasing risks, Victoza reduced cardiovascular risks and that using Victoza can "lower your risk for heart attack, stroke or death." Each of these commercials promoted promises of weight loss while minimizing risks, providing consumers, including Plaintiff, a sense of security regarding the use of the Product. As a result of Defendants' actions Plaintiff purchased and used Defendants' GLP-1 Product. Defendants' misrepresentations and unconscionable practices caused Plaintiff's injur(ies) and ascertainable loss. Plaintiff incorporates Exhibit "B."

*Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.    If Plaintiffs is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:*

a.    Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

The New Jersey Products Liability Act ("NJPLA") is codified in the New Jersey Revised Statutes at Title 2A, Chapter 58C, specifically sections N.J. Rev. Stat. 2A:58C-1 through N.J. Rev. Stat. 2A:58C-11, and governs claims for defective products, covering design defects, manufacturing flaws, and failures to warn. Plaintiff brings his claims under N.J. Rev. Stat. §§ 2A:58C-1 (Findings; definitions) and 2A:58C-2 (Liability of manufacturer or seller in product liability action).

b.    Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim:

The NJPLA subsumes Failure to Warn–Negligence (Count 1); Failure to Warn–Strict Liability (Count II); Breach of Express Warranty (Count III); Breach of Implied Warranty (Count IV); Negligent Misrepresentation/ Marketing (Count VII); Strict Product Liability Misrepresentation/Marketing (Count VIII); Innocent Misrepresentation (Count IX); Negligence (Count XI); and Negligent Undertaking (Count XII).

c.    Identify the factual allegations supporting those claims:

Defendants as both sellers and manufacturers of the GLP-1 RA Product(s) produced defective Product(s) that were unsafe and known to be unsafe to the ordinary consumer, and which Defendants knew could have been designed to

be safer, and that would cause injury as produced and sold. Defendants also failed to provide adequate warnings or information with regard to their products and misled consumers, including Plaintiff, as well as consumers' physicians regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). Plaintiff was overweight and was prescribed Victoza. He was exposed to advertisements regarding the weight loss advantages of Victoza which omitted and/or downplayed the risks of using the medication. Instead, the characters within Defendants' television commercials stated the Product was "better than leading branded injectables – the one I used to use" and "while it isn't for weight loss, Victoza may help you lose some weight." Defendants' commercials further focused on the fact that rather than increasing risks, Victoza reduced cardiovascular risks and that using Victoza can "lower your risk for heart attack, stroke or death." Each of these commercials promoted promises of weight loss while minimizing risks, providing consumers, including Plaintiff, a sense of security regarding the use of the Product. As a result of Defendants' actions, Plaintiff purchased and used Defendants' GLP-1 Product which caused his injur(ies).

In addition, Plaintiff incorporates the following paragraphs from the *Master Complaint* (ECF 481) by reference:

Count I:    Failure to Warn – Negligence (paragraphs 606-640)

Count II:    Failure to Warn – Strict Liability (paragraphs 641-674)

Count III:  Breach of Express Warranty/Failure to Confirm to Representations (paragraphs 675-698)

Count IV:  Breach of Implied Warranty (paragraphs 699-720)

Count V:   Fraudulent Concealment/Fraud by Omission (paragraphs 721-779)

Count VI:  Fraudulent/Intentional Misrepresentation (paragraphs 780-800)

Count VII: Negligent Misrepresentation/Marketing (paragraphs 801-824)

Count VIII: Strict Product Liability Misrepresentation/Marketing (paragraphs 825-848)

Count IX:  Innocent Misrepresentation/Marketing (paragraph 849)

Count X:   Unfair Trade Practices/Consumer Protection (paragraphs 850-865) (see below)

Count XI:  Negligence (paragraphs 866-880)

Count XII – Negligent Undertaking (paragraphs 881-903)

Count XIII: - State Product Liability Acts (paragraphs 904-911)

See also the Factual Allegations Section of the *Master Complaint*.

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.     If pre-suit notice is required by statute, did Plaintiff(s) provide some form of separate pre-suit notice to Defendant(s)?   N/A   .  If so, attach such notice.

## **RELIEF**

Plaintiff(s) pray(s) for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the

Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any

additional relief to which Plaintiff(s) may be entitled.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Date:  ___January 8, 2026_____          By:  _____

Kristie M. Hightower (LA Bar #31782)
Lundy LLP
501 Broad Street
Lake Charles, LA 70601
khightower@lundyllp.com
T: (337) 439-0707
F: (337) 439-1029

*Counsel for Plaintiff*

# EXHIBIT A

**FRAUD SUPPLEMENT - COUNTS V & VI**

1.      Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2.      Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3.      At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiffs and their prescribing physicians.

4.      Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5.      Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6.      Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiffs and their prescribing physicians to use and prescribe the GLP-1 RA Products.

**Count V: Fraudulent Concealment / Fraud by Omission**

7.      Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Risk of Severe GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b.  Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c.  Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d.  Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will likely rise, and can even become higher than they were before starting the medication.

e.  "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f.  "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which

can lead to negative health outcomes.

8.    As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Plaintiff was ignorant of the facts related to Defendants' Product(s) and did not have an equal opportunity to discover them. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

9.    As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**Count VI: Fraudulent / Intentional Misrepresentation**

10.    Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

    a.    Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b.  Defendants made misrepresentations to the public and to Plaintiff by airing
the widespread "Oh, Oh, Oh, Ozempic" television commercial, which
falsely created a misleading impression of the GLP-1s' safety profiles
generally. Specifically, the commercial represented a character saying, "No
increased risk!" which was an incomplete and misleading statement of
safety that tended to assure viewers GLP-1 Products were completely safe.
Furthermore, while the commercial mentioned common gastrointestinal
(GI) side effects like nausea and vomiting, it intentionally minimized the
risk by failing to clarify the severe, incessant, and debilitating nature of these
symptoms. Defendants concealed and omitted all mention of serious
adverse events they knew or should have known to be associated with
Ozempic use. These omissions created a deceptive net impression intended
to induce consumers to request the Product and/or other GLP-1 Products.
Defendants' follow-up television commercials continued the "Oh, Oh, Oh,
Ozempic!" brand theme as well as stating "no increased risk."

c.  Defendants made misrepresentations to the public and to Plaintiff by airing
widespread television commercials regarding the GLP-1 Product Victoza,
marketing the Product for weight loss, with characters within the
commercials stating Victoza lowers A1C "better than the leading branded
injectable – the one I used to use" and "while it isn't for weight loss, Victoza
may help you lose some weight." Defendants' further downplayed risks of
using the Product while placing focus on cardiovascular benefits, stating the
use of Victoza "now reduces cardiovascular risks" and will "lower your risk

for heart attack, stroke or death," These tactics falsely created a misleading impression of the drug's safety profile. These omissions created a deceptive net impression intended to induce consumers to request the product.

d.  Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

11.    Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight." Relying on this false and misleading net impression that Victoza was a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs, and Plaintiff was induced to take them.

12.    Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight loss benefits, Plaintiff would not have used the product, and/or Plaintiff's prescribing physician would not have prescribed it.

13.     As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

# EXHIBIT B

## <u>UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT</u>

1.    Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")* and its paragraphs as though set forth fully at length herein.

2.    Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.    Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.    The New Jersey Consumer Fraud Act ("New Jersey CFA" or the "Statute" ) provides, "[t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J. Rev. Stat. § 56:8-2.

5.    Plaintiff and/or Defendants are "persons" under the Statute.

6.    Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.    Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.    Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9.    Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in New Jersey. In addition, Defendants sold the GLP-1 RA Products to residents of New Jersey; shipped GLP-1 RA Products to New Jersey; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in New Jersey. Defendants' misconduct described herein significantly affected New Jersey consumers.

10.    As alleged in the *Master Complaint*, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

    a.  Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

    b.  Excessively advertising, marketing, and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

    c.  Failing to disclose that they performed research and testing in a manner that

would lead to under-reporting of the severe risks of using the GLP-1 RA

Products.

11.    As described in the *Master Complaint*, including in the paragraphs cited in paragraph 856 of the *Master Complaint* as well as paragraphs 447 through 576 of the *Master Complaint*, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12.    As described in the *Master Complaint*, including in paragraphs 577 through 601 of the *Master Complaint*, at all relevant times, Defendants knew or should have known that their GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as — or more than — the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13.    The information referenced above that Defendants misrepresented, concealed, and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14.    Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians, and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15.    Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16.    Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17.    Plaintiff was exposed to and justifiably relied upon Defendants' widespread national direct-to-consumer advertising campaigns for Victoza, as well as other GLP-1 Products. In all these materials, Defendants promoted the benefit of weight loss while misrepresenting and omitting the true nature, severity, and duration of gastrointestinal side effects and the serious risks. This advertising exposure included, but was not limited to, seeing the Victoza television commercials on national television which included characters stating Victoza lowers A1C "better than the leading branded injectable – the one I used to use" and "while it isn't for weight loss, Victoza may help you lose some weight." Defendants' further downplayed risks of using the

Product while placing focus on cardiovascular benefits, stating the use of Victoza "now reduces cardiovascular risks" and will "lower your risk for heart attack, stroke or death,"

18.     These commercials falsely created misleading impressions of the drug's safety profile. Specifically, these commercials included incomplete and misleading statements of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercials mentioned common gastrointestinal (GI) side effects like nausea and vomiting, they intentionally minimized the risks by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Victoza use.

19.     Defendants knew the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

20.     By consistently and pervasively understating the risk and overstating the benefits of taking GLP-1 RA Products, Defendants engaged in unfair, deceptive, and/or fraudulent acts in violation of the statute by knowingly concealing, suppressing and/or omitting material facts including the characteristics, uses, benefits, standard, quality, grade and/or risks of Defendants' GLP-1 Product(s) with the intent that consumers and/or physicians would rely upon such concealment, suppression or omission, in connection with the sale and/or advertisement of Defendants' GLP-1 Product(s). *See* N.J. Stat. Ann. § 56:8-2.

21.     In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection

with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

22.    Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

23.    Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

24.    As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants misrepresentations and omissions. Defendants expected or should have expected reasonable consumers to rely on these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

25.    Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

26.    The actions and omissions of Defendants are uncured or incurable.

27.    As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

28.     As a producing cause of Defendants' unlawful acts, Mr. Young purchased and used the GLP-1 RA Product and suffered injuries as set forth in paragraphs 16 to 18 in the Short Form Complaint.

29.     As a direct and proximate result of Defendant(s)' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

30.     Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.